**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| Richard J. Vinet (202401083), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 22 C 6482 |
| v. | ) | |
| | ) | Hon. Elaine E. Bucklo |
| David Chadek, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this *pro se* civil rights lawsuit pursuant to 42 U.S.C § 1983, Plaintiff Richard J. Vinet, presently an inmate at Cook County Jail, challenges the constitutionality of his June 23, 2021 arrest. Before the Court is Defendant Officer David Chadek's motion for summary judgment, to which Plaintiff has responded. For the reasons stated below, Defendant's motion is granted.

**I.     BACKGROUND**[1]

### A.     Procedural History

Plaintiff Richard Vinet ("Plaintiff") is presently a Cook County Jail detainee and was at all relevant times an adult citizen of Illinois. (SOF ¶ 1.) Defendant David Chadek ("Defendant") was at all relevant times a police officer serving Bedford Park, Illinois. (SOF ¶ 2.)

Plaintiff filed his Complaint on November 18, 2022, claiming that Defendant and another police officer (since dismissed as a Defendant) violated his constitutional rights during the course

---

[1] Because Plaintiff is proceeding *pro se*, Defendant served him with a "Notice to *Pro Se* Litigant Opposing Motion for Summary Judgment" as required by Local Rule 56.2. (Dkt. 102.) Plaintiff responded with one filing in the vein of a memorandum – which was docketed twice, once as a "summary judgment answer" and once as a "motion to strike" – that is not compliant with Local Rule 56.1. (Dkts. 107, 108.) Because Plaintiff has not properly responded to Defendant's LR 56.1 factual statements, (Dkt. 95, DSOF), the Court will accept them as true to the extent supported by the record. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). Nonetheless, although the Court is entitled to demand strict compliance with Local Rule 56.1, *see Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x. 642, 643 (7th Cir. 2011) (unpublished), it will generously construe the facts identified by Plaintiff in his response to the extent they are supported by the record or he could properly testify to them. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (courts may construe *pro se* submissions leniently). The Court notes, in any event, that the record largely consists of video evidence and audio recordings depicting the incident. The Court also is mindful that failure to strictly comply with Local Rule 56.1, or indeed to respond at all to a motion for summary judgment, does not automatically warrant judgment in favor of the moving party. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006) (moving party has "ultimate burden of persuasion" to show entitlement to judgment as a matter of law). The Court will apply these standards in evaluating the evidence.

of his arrest on June 23, 2021. (Dkt. 1.)   On January 9, 2023, the Court screened Plaintiff's Complaint under 28 U.S.C. § 1915, and although deeming Plaintiff's allegations "minimal", permitted him to proceed on claims that Officer Chadek "[1] arrested Plaintiff without probable cause and . . . [2] used excessive force while doing so by twice tasing Plaintiff." (SOF ¶¶ 3-4.)

### B.      Plaintiff's Arrest

Unless otherwise noted, the evidence submitted in support of the following factual statements consists of several bodycam video and 911 audio recordings of the incident, which the Court has reviewed.   On June 23, 2021, at 2:20 PM, 911 dispatch received an emergency call from an unknown male. (SOF ¶ 7.)   When asked by dispatch what his emergency was, the caller stated, "I'm at the corner of 71st and Cicero. I've got a guy with a knife…holding a knife on me." (SOF ¶ 8.) The caller can be heard speaking to someone and telling them to "back the fuck up." (SOF ¶ 9.) The caller then states to dispatch that his assailant threw a rock "big as a boulder" at him. (SOF ¶ 10.)   In a separate 911 call at 2:20PM, another unknown male reported that a man was on 71st and Cicero "chasing another guy with a knife." (SOF ¶ 11.) Defendant testified that dispatch then broadcasted to officers in the area, including himself and Officer Michalek, that a male subject was threatening another male with a knife at the intersection of Cicero Avenue and 71st Street. (SOF ¶ 12.)

Officer Michalek arrived at the scene, sighted Plaintiff, and confirmed with a bystander that Plaintiff was the individual identified in the 911 calls. (SOF ¶ 13.) Officer Michalek immediately instructed Plaintiff to stop. (SOF ¶ 14.)   Instead of stopping, Plaintiff fled Officer Michalek on foot, abandoning his bicycle and running through tall grass toward a nearby Walmart parking lot. (*Id.*)

Officer Michalek began pursuing on foot. (*Id.*) At around this time, Defendant arrived at the scene and made contact with the victim of the assault, who informed him that Plaintiff had taken off on foot, and that Officer Michalek was chasing him. (SOF ¶ 15.)   Defendant also pursued Plaintiff on foot, following Officer Michalek. (SOF ¶ 16.)     Officer Michalek then advised dispatch that Plaintiff was fleeing "into Walmart". (SOF ¶ 17.   Plaintiff continued to flee on foot. (SOF ¶ 18.)   Officer Michalek instructed him to stop and put his hands up seven times. (*Id.*) Plaintiff did not comply. (*Id.*)

Plaintiff eventually came to a stop in the parking lot of a Walmart store.   (SOF ¶ 19.) When Plaintiff eventually stopped fleeing, Officer Michalek and Defendant approached, with Officer Michalek arriving first. (SOF ¶ 20.)   Officer Michalek had his handgun drawn, and Defendant  had his taser drawn. (*Id.*)   Plaintiff was then told 11 separate times to get on the ground. (SOF ¶ 21.)   Plaintiff ignored all these instructions. (SOF ¶ 22.)

Defendant testified that he saw a large knife protruding from Plaintiff's front pocket. (SOF ¶ 23.)   Plaintiff then pivoted on one foot, turning to face away from the officers. (SOF ¶ 24.)   At that moment, Defendant discharged his taser. (*Id.*)   Approximately three seconds elapsed from the time Defendant came to a stop through the time Plaintiff pivoted and Defendant deployed his taser.

(*Id.*) Plaintiff did not react to the taser, and Defendant can be heard to report that the taser deployment was unsuccessful. (SOF ¶ 25.) Later, Officer Michalek stated that "[Officer Chadek] deployed one round of the taser; it was ineffective." (SOF ¶ 26.) Defendant testified that he deployed his taser only once. (SOF ¶ 27.)

After the taser was deployed, Plaintiff began to get down on his hands and knees, and both officers then continued to repeatedly instruct him to get onto his stomach. (SOF ¶ 28.) Plaintiff did not comply. (*Id.*) Defendant then approached Plaintiff to detain him and search for the knife referenced by the 911 callers. (SOF ¶ 29.) Plaintiff continued to disregard instruction to get on his stomach. (SOF ¶ 30.) Defendant removed the knife from Plaintiff's pocket. (SOF ¶ 31.) Officer Michalek then approached Plaintiff and physically placed him on the ground, and Plaintiff was secured with handcuffs. (SOF ¶ 32.)

On camera, Officer Michalek then provided a further description of the events leading to Plaintiff's detention, stating:

> I said stop. He took off…I started taking off after him. He went into the bushes. Dropped his backpack, saying something about he was going to kill me…I got through, saw him running… stopped here, [Officer Chadek] was behind me. I had him at gunpoint. [Officer Chadek] deployed one round of taser, it was ineffective…[Plaintiff] went to his hands and knees. [Officer Chadek] took the knife…I put his hands behind his back and [Officer Chadek] cuffed him.

(SOF ¶ 36.)

Officer Michalek asked Plaintiff if he was hurt and if he needed an ambulance. (SOF ¶ 33.) Plaintiff replied that he did not need an ambulance. (*Id.*) EMS personnel nonetheless arrived, and Plaintiff stated, "I don't need no EMS, no nothing." (SOF ¶ 34.) Plaintiff was examined by EMS but refused further treatment. (SOF ¶ 35.)

Upon being booked at the jail, Plaintiff was permitted to make a phone call, during which Plaintiff stated that the police were "being good people." (SOF ¶ 37.) Upon a search incident to his detainment, officers found Plaintiff to be possessing a gun. (SOF ¶ 38.) A sergeant from the scene informed Plaintiff that he was being charged with assault. (SOF ¶ 39.) Plaintiff then apologized, stating that he would accept what was coming and "take it like a man." (SOF ¶ 40.) When Plaintiff was asked if he sustained any injuries during the administration of the taser gun earlier that day, he responded, "No, I just fell and pulled it out, but I don't even feel anything." (SOF ¶ 41.)

Plaintiff was thereafter formally arrested and read his rights. (SOF ¶ 42.) Plaintiff was charged with unlawful use of a weapon by a felon, four counts of possession/use of a weapon, felon in possession of a firearm, aggravated unlawful use of a weapon, and aggravated assault with a deadly weapon. (SOF ¶ 43.) Plaintiff was found guilty of being a felon in possession of a

3

firearm, and the remaining five charges were dropped. (*Id.*)

## II.      LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine when a genuine dispute of material fact exists, the Court must assess the evidence in the record as presented in depositions, documents, affidavits or declarations, and other materials. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992).

The party seeking summary judgment bears the initial burden of showing the grounds for his motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once he has done so, "the burden shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). "A genuine issue of material fact exists only if 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Brown v. Osmundson*, 38 F.4th 545, 549 (7th Cir. 2022) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

!

The Court must construe all facts in the light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Id.* However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those supported by only speculation or conjecture," *Grant v. Trs. Of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (cleaned up). Additionally, when the events in question were preserved on video, the court must view the facts "in the light depicted by the videotape," provided that "[t]here are no allegations or indications that th[e] videotape was doctored or altered in any way, nor any contention that what it depicts differs from what actually happened." *Jones v. Anderson*, 116 F.4th 669, 677 (7th Cir. 2024) (quoting *Scott v. Harris*, 550 U.S. 372, 378, 381 (2007)). There are no such allegations in this case, so the Court will view the facts in the light depicted by the videotaped (and audio-recorded) evidence.

## III.     DISCUSSION

Defendant has moved for summary judgment on both Plaintiff's false arrest and excessive force claims. (Dkt. 94, DMEM, pg. 5-15.) He seeks summary judgment on the false arrest claim on the ground that there was probable cause to arrest and detain Plaintiff. He seeks summary judgment on Plaintiff's excessive force claim on the grounds that the force used to effectuate Plaintiff's arrest was objectively reasonable under the circumstances, and, even if the Court were to find otherwise, that he is entitled to qualified immunity because his actions did not violate a clearly established constitutional right. For the following reasons, Defendant's motion for

summary judgment is granted, and this case is dismissed in its entirety.

### A. False Arrest

The existence of probable cause is an absolute defense to a § 1983 claim for wrongful arrest. *See Dollard v. Whisenand*, 946 F.3d 342, 353 (7th Cir. 2019) ("Probable cause is an absolute bar to a claim of false arrest asserted under the Fourth Amendment and section 1983."); *see also Mustafa v. City of Chicago,* 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution.").

"Probable cause exists to arrest a suspect if at the time of arrest the facts and circumstances within the arresting officer's knowledge and of which he has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Dollard*, 946 F.3d at 353 (citation omitted). The determination of probable cause depends not on "the facts as an omniscient observer would perceive them, but instead as they would have appeared to a reasonable person in the position of the arresting officer." *United States v. Howard*, 883 F.3d 703, 707 (7th Cir. 2018) (cleaned up). "The complaint of a single witness or putative victim alone generally is sufficient to establish probable cause to arrest unless the complaint would lead a reasonable officer to be suspicious, in which case the officer has a further duty to investigate." *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003); *accord Hart v. Mannina,* 798 F.3d 578, 587 (7th Cir. 2015) ("Probable cause can be based on a single identification from a credible eyewitness."); *Woods v. City of Chicago*, 234 F.3d 979, 997 (7th Cir. 2000) ("police officers have no constitutional obligation to conduct any further investigation before making an arrest if they have received information from a reasonably credible victim or eyewitness sufficient to supply probable cause").

As Defendant has established, the undisputed facts here demonstrate that probable cause supported Plaintiff's arrest. (DMEM, pg. 5-6.) Given that Defendant arrived on the scene in response to the 911 dispatcher's broadcast and that the responding officers confirmed with an eyewitness that Plaintiff (who was fleeing) was the assailant, the Court finds as a matter of law that Defendant had probable cause to believe Plaintiff was the individual who had brandished a knife and thrown a rock at the victim and thus had committed one or more crimes in relation to the June 23, 2021 incident.[2] Additionally, Defendant was entitled to rely on Officer Michalek's probable cause determination as it pertains to his own involvement in arresting and detaining Plaintiff. *See Taylor v. Hughes*, 26 F.4th 419, 436 (7th Cir. 2022) ("one officer's determination of probable cause may be imputed to other officers in the department, who may arrest on the basis of the first officer's finding.").

---

[2] For example, assault is defined as "knowingly engag[ing] in conduct which places another in reasonable apprehension of receiving a battery." 720 ILCS 5/12-1 (a). Battery is defined as "(1) caus[ing] bodily harm to an individual or (2) mak[ing] physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12 -3 (a). Simple assault is elevated to aggravated assault when the victim of the assault is "on or about a public way, public property, [or] a public place of accommodation or amusement" 720 ILCS 5/12-2 (a), or where the assailant uses a deadly weapon. 720 ILCS 5/12-2 (c)(1).

In his response, Plaintiff does not identify any basis to conclude that Defendant acted unreasonably in relying on the victim's 911 account and the eyewitness' identification to determine probable cause existed. Instead, Plaintiff refers the Court to additional bodycam video of a sergeant who arrived on the scene after Plaintiff was already handcuffed, during which another bystander told the sergeant that the fight started after the victim apparently pushed Plaintiff off his bike. (Dkt. 108, PRESP, pg. 2.)[3] But this evidence does not tend to negate probable cause. First, this bystander's account does not in fact contradict that Plaintiff wielded a knife or threw a rock during the ensuing fight. And most importantly, nothing about this witness' additional account – learned after the arrest was completed – infers that the officers should have doubted the veracity of the victim at the time of the 911 call or the identification when they arrived on the scene. The law is clear that in these circumstances they were under no obligation to conduct further investigation before pursuing Plaintiff. "So long as an officer reasonably believes the putative victim or eyewitness to a crime is telling the truth, he may rely on the information provided to him by such persons in deciding to make an arrest, without having to conduct an independent investigation into their accounts." *Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013); *see also Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 716 (7th Cir. 2013) (an officer need conduct "no independent investigation . . . [where] a reasonably credible witness informs an officer that a suspect has committed a crime") (citations omitted); *Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006) ("[t]he existence of probable cause does not depend on the actual truth of the complaint" and "officers [a]re entitled to take [a complaining witness] at his word as to [a suspect]'s actions") (citation omitted).

Plaintiff also states that all the officers involved were white, and he is "indigenous". (RESP, pg. 2-3.) Plaintiff asserts that the officers pursued him because they are "racist" and "biased" against individuals who are "looked at as of being black, brown, or indigenous". (*Id.*) This assertion is supported by no evidence whatsoever and is mere speculation insufficient to defeat summary judgment. *See generally Weaver v. Champion Petfoods USA Inc.*, 3 F.4th 927, 934 (7th Cir. 2021) (a party "must present more than mere speculation or conjecture to defeat a summary judgment motion."); *see also Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (summary judgment is the "put up or shut up moment in a lawsuit"); *see also Hicks v. City of Chicago*, No. 15 C 06852, 2017 WL 4339828, at *8 (N.D. Ill. Sept. 29, 2017) (collecting cases holding that a bald assertion of racial profiling fails to state a claim).

In sum, the summary judgment evidence demonstrates no genuine dispute of a material fact with respect to whether probable cause existed for Plaintiff's arrest, and Defendant has demonstrated that he is entitled to summary judgment on Plaintiff's false arrest claim.

### B. Excessive Force

Plaintiff was also permitted to proceed on an excessive force claim based on Defendant's deployment of his taser while arresting Plaintiff. (Dkt. 18.) Although Plaintiff alleged in his

---

[3] At Plaintiff's request, Defendant separately submitted this particular video recording into the record prior to Plaintiff responding to the summary judgment motion. (Dkts. 104-106.)

complaint that Defendant tasered him twice, the video evidence conclusively shows that Defendant deployed his taser only once, and the claim will be analyzed as such. As set forth above, Defendant seeks summary judgment on Plaintiff's excessive force claim on the ground that the tasering was objectively reasonable under the circumstances, and, even if the Court were to find otherwise, that he is entitled to qualified immunity because his actions did not violate a clearly established constitutional right. (DMEM, pg. 8-13.)

"A public official is entitled to qualified immunity from suit unless he violated a clearly established right." *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). In the context of Fourth Amendment excessive force claims, "the qualified-immunity doctrine gives 'enhanced deference to officers' on-scene judgments about the level of necessary force.' " *Dockery*, 911 F.3d at 466 (quoting *Abbott*, 705 F.3d at 725).

Determining whether qualified immunity applies involves a two-step inquiry, "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013). "If *either* inquiry is answered in the negative, the defendant official is protected by qualified immunity." *Koh v. Ustich*, 933 F.3d 836, 844 (7th Cir. 2019) (quoting *Reed v. Palmer*, 906 F.3d 540, 546 (7th Cir. 2018)). Courts have discretion to address the two qualified immunity prongs in whichever order is appropriate. *Jackson v. Anastasio*, 150 F.4th 851, 856 (7th Cir. 2025). Qualified immunity is an affirmative defense. *Sinn v. Lemmon*, 911 F.3d 412, 418 (7th Cir. 2018). But "once raised, the plaintiff bears the burden of defeating it by showing: (1) the defendant violated a constitutional right, and (2) that right was clearly established at the time of the alleged violation." *Id.*; *see Jackson*, 150 F.4th at 856.

Claims that police used excessive force during an arrest are analyzed under the Fourth Amendment's reasonableness standard. *Dockery*, 911 F.3d at 464 (citing *Graham v. Connor*, 490 U.S. 386, 395-97 (1989)). Whether the amount of force used is reasonable "turns on the totality of circumstances" facing the officers, "viewed from the perspective 'of a reasonable officer on the scene.'" *Id.* (quoting *Graham*, 490 U.S. at 396)). Factors to be considered in this analysis include: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting or attempting to evade arrest. *Baird v. Renbarger*, 576 F.3d 340, 344 (7th Cir. 2009) (citing *Graham*, 490 U.S. at 396). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97. Objective reasonableness "is a legal determination rather than a pure question of fact for the jury to decide." *Dockery*, 911 F.3d at 464; *see Bell v. Irwin*, 321 F.3d 637, 640 (7th Cir. 2003) (collecting cases).

To show that the right at issue was clearly established in the Fourth Amendment excessive force context, "the plaintiff must either (1) identify a closely analogous case that established a right to be free from the type of force the police officers used on him, or (2) show that the force was so

plainly excessive that, as an objective matter, the police officers would have been on notice that they were violating the Fourth Amendment." *Cibulka v. City of Madison*, 992 F.3d 633, 639 (7th Cir. 2021) (internal quotation marks and citations omitted). "Use of excessive force is an area of the law in which the result depends very much on the facts of each case, and thus police officers are entitled to qualified immunity unless existing precedent squarely governs the specific facts at issue." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018) ("existing precedent must have placed the statutory or constitutional question beyond debate.").

Because the Court finds for the reasons detailed below that, Defendant could have reasonably believed, in light of the existing law and the information he possessed at the time, that his deployment of the taser was lawful, he is entitled to qualified immunity on Plaintiff's excessive force claim.

The Seventh Circuit recognizes "two guideposts in an excessive-force case" involving the use of a taser. *Dockery*, 911 F.3d at 467. "The first is that an officer's use of a Taser against an actively resisting subject either does not violate a clearly established right or is constitutionally reasonable." *Id.* Examples of active resistance include "kicking and flailing," "declining to follow instructions while acting in a belligerent manner," and "swatting an arresting officer's hands away while backpedaling." *Id.* (citations omitted). "The second guidepost is that an officer many not use significant force (like a Taser) against a 'nonresisting or passively resisting' subject." *Id.* (citation omitted). Examples of nonresistance or passive resistance include "a 'docile and cooperative suspect' who posed no threat and 'did not resist in any way' and a handcuffed, passive suspect." *Id.* (citations omitted).

Here, the facts of this case fall somewhere between these guideposts. At the time that Defendant deployed his taser, Plaintiff was not belligerent or physically lashing out. But nor was he secured, cooperative, or submitting to the officers. Rather, at the time Plaintiff was tased, he was armed with a knife and repeatedly defying the officers' multiple instructions to get on the ground. Plaintiff then additionally turned to face away from the officers. And these interactions followed directly from Plaintiff's erratic assault of a civilian and his active flight from the officers. These facts all tend to demonstrate that an officer in Defendant's position would have reasonably believed that Plaintiff was a continued flight risk and posed a danger to the officers and other civilians in the vicinity.

Plaintiff has not pointed to any analogous precedent that "squarely governs" facts like these and found use of a taser was excessive in those circumstances, thereby placing the "constitutional question beyond debate." *Kisela*, 584 U.S. at 104. Indeed, Plaintiff's summary judgment response does not address Defendant's qualified immunity argument at all (and hardly addresses the claim of excessive force altogether). Nonetheless, recognizing that Plaintiff is *pro se*, the Court notes that it on its own located no precedential authority finding that a similar tasing constituted excessive force. This absence of precedential authority establishes qualified immunity. *See Johnson v. Rogers*, 944 F.3d 966, 969 (7th Cir. 2019) ("Only when precedent places the invalidity of a particular action beyond debate may damages be awarded.").

8

In fact, the Seventh Circuit has twice found qualified immunity in similar cases. First, *Brooks v. City of Aurora*, 653 F.3d 478 (7th Cir. 2011), involved an excessive-force claim by a suspect who backpedaled and swatted at a police officer who was attempting to arrest him. The suspect then stood still and "passively" faced the officers for a few seconds but did not manifest submission, so the officer pepper sprayed him. 653 F.3d at 487. The court concluded that the officer was entitled to qualified immunity because the plaintiff "ha[d] not submitted to the officer's authority, ha[d] not been taken into custody[,] and still arguably could [have] pose[d] a threat of flight or further resistance." *Id.* Second, in *Dockery*, the court found that qualified immunity protected the officers' second deployment of a taser where video evidence showed that the arrestee did not submit to the officers' authority after the first taser shock. Instead, "he sat up, pulled out one of the prongs, pointed an arm in [the officer's] direction, attempted to stand up, and otherwise ignored the officers' commands to get on the ground." *Dockery*, 911 F.3d at 468.

In sum, Plaintiff has not placed the hypothetical unreasonableness of Defendant's actions "beyond debate". Defendant is therefore entitled to qualified immunity – and summary judgment – as to the excessive force claim.

## IV. CONCLUSION

The Court grants Defendant's motion for summary judgment [93], and dismisses Plaintiff's claims with prejudice. Final judgment shall enter and all pending motions [108] [111] [113] shall be terminated as moot. If Plaintiff wishes to appeal, he must file a notice of appeal with this Court within thirty days of the entry of judgment. *See* Fed. R. App. P. 4(a)(1). If Plaintiff appeals, he will be liable for the $605.00 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Additionally, if the appeal is found to be non-meritorious, Plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g).

Date: February 27, 2026          /s/ Hon. Elaine E. Bucklo
                                                    United States District Judge

9